# ORIGINAL

## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

FILED

JAN 13 2016
U.S. COURT OF
FEDERAL CLAIMS

|  |  |
|---|---|
| ROGER BIRDBEAR, THOMAS P. BIRDBEAR, JAMIE LAWRENCE, and RAE ANN WILLIAMS,<br><br>       Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>       Defendant. | ) ) ) ) ) ) ) ) ) ) )<br><br>Case No. \_\_16-75 L\_\_ |

### COMPLAINT
### (RCFC(7)(a)(1))

#### Introduction

On December 8, 2009, the Secretary of Interior (the "Secretary"), then Kenneth Salazar, in settling the class action now known as *Cobell v. Jewell,* 1:96-CV-01285 (TFH), pending in the United States District Court for the District of Columbia, explained that while progress had been made in improving the management of individual Indian trust assets, "our work is not over." He therefore, entered Secretarial Order 3292 establishing the Secretarial Commission on Indian Trust Administration and Reform (the "Commission") to address the Department of Interior's "future responsibility for management and administration of trust assets maintained for individual Indian trust beneficiaries." The Commission's resulting December 10, 2013 Final Report recommended "sweeping reforms" of the trust system and identified a continuing need for substantial improvement in Interior's trust administration services. This action confirms, as the Secretary suggested and as the Commission identified, that truly much work remains to reform the federal government's management of the individual Indian Trust.

The Plaintiffs are enrolled tribal members and holders of Individual Indian Money ("IIM") accounts. They are the beneficial owners of approximately 2,000 acres of allotted land, held in trust by the United States, within and surrounding the exterior boundaries of the Three Affiliated Tribes of the Fort Berthold Reservation (the "Reservation") within the exterior boundaries of the State of North Dakota. They are also the beneficiaries of individual Indian money ("IIM") accounts, held by the federal government as trustee, in which the proceeds of income from those lands are to be deposited and invested in income producing government securities. Approximately 1,550 acres of the Plaintiffs' allotted lands are leased for oil and gas mining purposes, the lessor being selected and approved by the Secretary in her capacity as trustee.

The majority of Plaintiffs' lands are located above multiple formations including the Bakken Formation, which consists of three separate formations rich in oil and natural gas and constitutes one of the largest contiguous deposits of oil and natural gas in the country. The Bakken Formation is known for its light sweet crude oil which commands a much higher price because of its lower sulfur content. While historically the Reservation has faced significant economic challenges and resulting poverty, the application of new technologies by which the oil reserves in the Bakken Formation could be accessed economically has caused a substantial increase in Bakken production and has brought much needed revenue to the Reservation. But the mismanagement of the Bakken production by the federal government has threatened the ability of individual allottees, such as the Plaintiffs, to realize the full benefit of their resources.

The United States, as trustee, maintains an "elaborate statutory and regulatory framework" over the leasing and management of oil and gas resources on the Plaintiffs' allotted lands through which the Secretary exercises comprehensive management and control. As a

consequence, the United States has owed and continues to owe the Plaintiffs fiduciary obligations in the management of their trust lands. However, as the United States Government Accountability Office recently found, the Department of Interior, and more specifically the Bureau of Land Management ("BLM"), has consistently failed to collect revenue from oil and gas produced on federally managed lands and has failed to provide required oversight and management of oil and gas operations.

The present Complaint exemplifies the government's mismanagement of individual Indian oil and gas resources. As set forth herein, and as to be shown through discovery and at trial, the United States has consistently breached its duties to Plaintiffs in the management of their land and resources. Plaintiffs' leases have not been properly advertised and bid competitively so the royalties they receive are markedly less than those received by non-Indian and tribal lessors on the Bakken Formation and elsewhere; the United States takes no action to rectify drainage of oil and gas from their lands, resulting in losses of tens of millions of dollars; the United States deducts expenses from royalties without explanation or documentation; the United States takes no action to address environmental contamination on Plaintiffs' properties; and the United States continues to fail to comply with its own fiduciary and regulatory obligations. Moreover, a specialized and experienced oil and gas management firm, after conducting a detailed analysis of Plaintiffs' properties and leases, just in the one year period prior to the filing of the present Complaint, determined that Plaintiffs have not been fully paid by the United States the income derived from their land, with Plaintiff Roger Birdbear, having been underpaid by over 20%. Plaintiffs have sought information from the United States, as trustee, regarding the management of their leases, but the information is either refused, ignored, or not provided in a reasonable or timely manner. Accordingly, this action is being filed.

3

## PARTIES

### The Plaintiffs

1.      Roger Birdbear is an enrolled tribal member, the beneficial owner of an undivided interest in over 1,200 acres of allotted land held in trust by the United States, within the exterior boundaries of the Reservation, and the beneficiary of an IIM account held in trust by the United States.

2.      Thomas P. Birdbear is an enrolled tribal member,  the beneficial owner of an undivided interest in over 800 acres of allotted land held in trust by the United States, within the exterior boundaries of the Reservation, and the beneficiary of an IIM account held in trust by the United States.

3.      Jamie Lawrence is an enrolled tribal member, the beneficial owner of an undivided interest in over 800 acres of allotted land held in trust by the United States, within the exterior boundaries of the Reservation, and the beneficiary of an IIM account held in trust by the United States.

4.      Rae Ann Williams is a tribal member, the beneficial owner of an undivided interest in over 800 acres of allotted land held in trust by the United States, within the exterior boundaries of the Reservation, and the beneficiary of an IIM account held in trust by the United States.

5.      The Plaintiffs all opted out of the settlement in *Cobell v. Jewell.*

### The Defendant

6.      The Defendant is the United States of America. In its capacity as trustee it holds the Plaintiffs' lands and related resources in trust "for the sole use and benefit of the Indian to whom such allotment has been made" and his or her heirs.  25 U.S.C. § 348.

7.    The United States has delegated its responsibility as trustee over Plaintiffs' land and resources to the Secretary. The present Secretary, Sally Jewell, identifies her role as, among other things, serving "as steward for approximately 20 percent of the nation's lands; oversee[ing] the responsible development of conventional and renewable energy supplies on public lands and . . . uphold[ing] trust responsibilities to the 566 federally recognized American Indian tribes and Alaska Natives." [1]

8.    The Secretary has, in turn, delegated trust responsibilities with respect to Plaintiffs' land and resources to the Acting Assistant Secretary - Indian Affairs, currently Larry Roberts, who oversees the Bureau of Indian Affairs ("BIA") within the Department of the Interior ("DOI"). His official duties include, *inter alia*, assisting and supporting "the Secretary of the Interior in fulfilling the United States' trust responsibility to the Federally recognized American Indian tribes and villages and individual Indian trust beneficiaries, as well as in maintaining the Federal—Tribal government-to-government relationship." [2]  The mission of the BIA, under the leadership of its current Director, Michael Black, is to, among other things, "protect and improve the trust assets of American Indians." [3]  In carrying out that mission, it is responsible for the "administration and management of 55 million surface acres and 57 million acres of subsurface minerals estates held in trust by the United States for American Indian[s], Indian tribes and Alaska Natives." [4]

9.    Additional trust responsibilities are delegated to, among others, the Director of the BLM within the DOI, currently Neil Kornze. BLM states that its role is to, in part, "approve[]

[1] http://www.doi.gov/whoweare/secretaryjewell.cfm
[2] http://www.indianaffairs.gov/WhoWeAre/AS-IA/index.htm
[3] http://www.bia.gov/WhoWeAre/
[4] *Id.*

and supervise[] mineral operations" on Indian lands and to ensure that "developers and operators comply with use authorization requirements and regulations."[5]

10.    Trust duties are further delegated to, among others, the Director of the Office of Natural Resources and Revenue ("ONRR") within the DOI, currently Gregory J. Gould.  ONRR identifies its mission as the "collect[ion], disburse[ment] and verif[ication] [of] Federal and Indian energy and other natural resource revenues on behalf of all Americans." It further acknowledges its role is, in part, "to serve as trustee of royalty assets from Indian properties," to serve as "an advocate for the interests of Indian mineral owners," and, in conjunction with the BIA, "to provide[] revenue management services for mineral leases on American Indian lands" in which it contends "money collected is returned – 100 percent – to respective Indian tribes and individual Indian land owners."[6]

11.    In addition, trust responsibilities are also delegated to the Special Trustee of the Office of Special Trustee for American Indians ("OST") within the DOI, currently Vincent G. Logan. The OST is charged with upholding the federal government's trust responsibilities toward individual Indians and providing "superior management of trust assets."  Its duties include, among other things, "protect[ing] and preserv[ing] Indian trust assets from loss, damage, unlawful alienation, waste and depletion," "[a]ssur[ing] that any management of Indian trust assets that the Secretary has an obligation to undertake promotes the interest of the beneficial owner and supports, to the extent it is consistent with the Secretary's trust responsibility, the beneficial owner's intended use of the assets," "[e]nforc[ing] the terms of all leases or other

---

[5] http://www.blm.gov/wo/st/en/prog/energy.html
[6] http://www.onrr.gov/About/default.htm

agreements that provide for the use of trust assets," and "[s]elect[ing] and oversee[ing] persons who manage Indian trust assets,"[7] among others.

## JURISDICTION

12.     This Court has jurisdiction over these claims under the Tucker Act, 28 U.S.C. § 1491, as a "claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department or upon any express or implied contract with the United States." Pursuant to  28 U.S.C. § 1491, the United States has also waived its sovereign immunity.

## FACTS

### The Plaintiffs' Trust Land

13.     The Plaintiffs, individually or together, hold beneficial title to approximately 2,000 acres of allotted land in and around the Reservation. Of this total acreage, approximately 1,550 acres are leased for oil and gas mining purposes. Over 50 leases govern the Plaintiffs' leased allotted land.

14.     Three leases under which the Plaintiff  Roger Birdbear is the sole beneficial owner govern approximately 557.64 acres of the leased allotted lands, including, among others:

      a.     Tract 3111-A, which consists of 317.64 acres.

      b.     Tract 767A, which consists of 80 acres.

      c.     Tract 767A-A, which consists of 160 acres.

15.     Four leases, under which the Plaintiffs each have a twenty percent beneficial interest, govern approximately 799.72 acres of the Plaintiffs' leased allotted lands, including, among others:

      a.     Tract 710A, which consists of 319.72 acres.

---

[7] https://www.doi.gov/ost/about_us/Trust

b.      Tract 1062A, which consists of 320 acres.

c.      Tract 1338, which consists of 80 acres.

d.      Tract 1543, which consists of 80 acres.

16.      The Plaintiffs' allotted lands are primarily located on the Bakken Formation, which is considered the most significant oil and natural gas resource identified in the past 40 years. Oil in place for the Bakken Formation is estimated at not less than 167 billion barrels within the exterior boundaries of the State of North Dakota, alone. In 2013, the U.S. Geological Survey reported that oil resources in the Bakken Formation and the underlying Three Forks Formation contain approximately 7.4 billion barrels of recoverable oil using older technology, "doubling an estimate for the region made five years ago," and excluding "those oil shale reserves that have already been tapped or listed by industry." Some estimates are higher.

17.      The Bakken and Three Forks Formations are also estimated to hold a mean of not less than 6.7 trillion cubic feet of associated/dissolved natural gas and 0.53 billion barrels of technically recoverable natural gas liquids (NGLs).

18.      By reason of improved technology by which oil and gas resources in the Bakken Formation can be accessed economically, oil and gas production within the exterior boundaries of the State of North Dakota have increased markedly. On August 8, 2014, the U.S. Department of Energy released a Quadrennial Energy Review report on U.S. oil production, specifically focusing on, "formations in North Dakota (Bakken) and Texas (Eagle Ford and Permian Basin)." The report stated: "[I]n May 2014, oil production in the state of North Dakota exceeded one million barrels per day (MMBbl/d), almost 12% of U.S. crude oil production."

19.      Crude oil from the Bakken is primarily light sweet crude, as compared to heavier crudes produced from conventional domestic reservoirs, Canadian synthetic crudes, and crude oil

imported from other countries. Bakken crude has low density and is relatively volatile, with typically 38°–42° American Petroleum Institute (API) gravity and 0.13 % sulfur. This high-value crude with a high gasoline yield commands a higher price.

The United States' Statutory and Regulatory Framework Governing Plaintiffs' Trust Land

20.    The United States, in its capacity as trustee, by statute and regulation, has broad, comprehensive and pervasive management over the leasing and administration of oil and gas leases on allotted lands in Indian Country including those of Plaintiffs.  The management by the federal government is intended to "ensure that Indian mineral owners desiring to have their resources developed are assured that they will be developed in a manner that maximizes their best economic interests and minimizes any adverse environmental or cultural impacts resulting from such development," 25 C.F.R. § 212.1, and "promote(s) the orderly and efficient exploration, development and production of oil and gas." 43 C.F.R. § 3160.0-4.

21.    The United States' comprehensive management of Plaintiffs' lands is exemplified by the following:

     a.    Any application for a lease of Plaintiffs' land must be submitted to the BIA official at the Fort Berthold Agency in New Town, N.D. having jurisdiction over the minerals on Plaintiffs' lands. 25 C.F.R. § 212.20(a).

     b.    The Secretary controls the advertising of Plaintiffs' leases so that they may receive "optimum competition" for bonus consideration. 25 C.F.R. § 212.20(b).

     c.    The Secretary determines if any application or bid is in "the best interests of [Plaintiffs]." 25 C.F.R. § 212.20(b)(6).

     d.    The Secretary determines the amount of any bond in connection with any lease of Plaintiffs' land and requires that such bond be accompanied by a certificate of

deposit or letter of credit payable to the United States or Treasury securities with an authorization for the United States to sell such securities. 25 C.F.R. §§ 211.24, 212.24.

      e.      The Secretary determines the acreage limitations and duration of Plaintiffs' leases. 25 C.F.R. §§ 211.25, 211.27, 212.25, and 212.27.

      f.      The Secretary must approve each of Plaintiffs' leases prior to mineral operations on Plaintiffs' lands and must provide written permission prior to commencement of mineral operations, 25 C.F.R. §§ 211.48, 212.48, after considering the Lessee's Application for a Permit to Drill. 43 C.F.R. § 3162.3(h).

      g.      The Secretary determines the amount and manner of payment under Plaintiffs' leases. 25 C.F.R. § 212.40; 43 C.F.R. § 3162.7-4.

      h.      The Secretary must approve the suspension of the operations under Plaintiffs' leases, 25 C.F.R. §§ 211.44, 212.44, or the surrendering of Plaintiffs' leases, 25 C.F.R. §§ 211.45, 212.45, and is given authority to cancel Plaintiffs' leases.

      i.      Plaintiffs' leases designate an "oil and gas supervisor," who is an officer of the Secretary and is to "supervise oil and gas operations" on Plaintiffs' lands. Those responsibilities include, but are not limited to:

      (i)      Determining the need for offset wells to protect the leased land from drainage.

      (ii)      Determining the value of all oil, gas or natural gasoline and all other hydrocarbon substances produced from the leased land for purposes of calculating the royalty payment.

      (iii)      Receiving monthly statements from the lessor for the purpose of calculating the royalty.

(iv)    Receiving the well log from the lessor.

(v)    Entering orders and imposing other requirements on the lessee in order to prevent waste and preserve the property.

j.    The United States is to designate an "Authorized Representative" or "Authorized Officer" with respect to Plaintiffs' leases, who is to, among other things:

(i)    "[A]pprove, inspect and regulate" the leased operations. 43 C.F.R. § 3161.2.

(ii)    "[R]equire compliance with lease terms" and with applicable regulations. *Id.*

(iii)    "[R]equire that all operations be conducted in a manner which protects other natural resources and the environmental quality, protects life and property and results in the maximum ultimate recovery of oil and gas with minimum waste and with minimum adverse effect on the ultimate recovery of other mineral resources." *Id.*

(iv)    Require that the lessee drill and produce such wells as necessary so that the lease may be "timely and properly developed and produced" in accordance with good economic operating practices." 43 C.F.R. § 3162.2(c).

(v)    Approve or prescribe a well spacing program. 43 C.F.R. § 3162.3-1(a).

(vi)    Approve any plan for well abandonment. 43 C.F.R. § 3162.3-4.

(vii)    Require that the lessor or well operator conduct tests, run logs and make surveys to determine the "quality of oil, gas, other minerals, or the presence or quality of water; to determine the amount and/or direction of deviation of any

11

well from the vertical; and to determine the relevant characteristics of the oil and gas reservoirs penetrated." 43 C.F.R. § 3162.4-2.

(viii)    Prepare an environmental record of review or environmental assessment prior to authorizing drilling. 43 C.F.R. § 3162.5-1(a).

(ix)    Authorize the disposal of water produced during drilling operations. 43 C.F.R. § 3162.5-1(a).

(x)    Approve methods to control pollutants as a result of spills or leakages of oil, gas, produced water, toxic liquids, or waste materials. 43 C.F.R. § 3162.5-1(c).

(xi)    Require the lessee or operator to implement a contingency plan to protect life, property, and the environment. 43 C.F.R. § 3162.5-1(d).

(xii)    Approve any drilling that deviates significantly from the vertical. 43 C.F.R. § 3162.5-2(b).

(xiii)    Approve or prescribe practices or procedures to protect freshwater and other usable minerals from contamination. 43 C.F.R. § 3162.5-2(d).

(xiv)    Prescribe safety and health requirements for the lessee or operator. 43 C.F.R. § 3162.5-3.

(xv)    Determine the means by which oil and gas production on Plaintiffs' land is measured. 43 C.F.R. § 3162.7-2 and 3.

(xvi)    Determine non-compliance and assess penalties. 43 C.F.R. § 3163.

k.    The United States is responsible for the collection of all lease payments and the enforcement thereof.

l.      In addition, the Department has implemented various policies and procedures with respect to the management of Plaintiffs' land, including those set forth in the BIA Fluid Mineral Estate Procedural Handbook, the Onshore Energy and Mineral Lease Management Interagency Standard Operating Procedures and the BLM Best Practices and Procedures and Diligence Manuals for Oil and Gas Production.

22.      By reason of its comprehensive statutory and regulatory management of oil and gas leasing and production on Indian allotted land, the United States, as trustee, has a fiduciary obligation in its administration and management of the leasing operations and production of oil and gas on Plaintiffs' lands, including an obligation to act at all times in Plaintiffs' best interests and to comply with and enforce its own statutes and regulations. These statutes, regulations and corresponding fiduciary obligations mandate compensation by the federal government for damages sustained.

23.      The United States, and its officers charged with carrying out its legal obligations and trust duties, has breached its fiduciary obligations and other duties, and mismanaged, and continue to mismanage, the Plaintiffs' leased allotted lands and the resources located thereon in at least the following respects, among others:

a.      The United States has failed to ensure that the lessors of the Plaintiffs' land that was leased for oil and gas mining purposes met their legal and contractual obligations.

b.      The United States has approved leases for Plaintiffs' land that are in direct violation of federal statutes and regulations.

c.      The United States has failed to subject Plaintiffs' oil and gas producing allotted lands to a competitive auction as required by 25 C.F.R. § 212.20, accepting lease

applications in violation of statutory and regulatory requirements, resulting in royalty and per acre bonus rates which were unreasonable and less than fair market value.

      d.     The United States approved leases that were "not in the best interest" of the Plaintiffs and failed to develop their mineral interests "in a manner that maximizes their best economic interests," in violation of 25 C.F.R. § 212.1 and 25 C.F.R. § 212.20(b)(6).

      e.     The United States has failed to advertise Plaintiffs' land for lease in such a manner that they receive "optimum competition" for bonus consideration as required by 25 C.F.R. § 212.20(b).

      f.     The United States has, upon information and belief, failed to designate or maintain an oil and gas supervisor to supervise the oil and gas operations on Plaintiffs' lands.

      g.     The United States has failed to inspect and regulate Plaintiffs' leased operations as required by 43 C.F.R. § 3161.2.

      h.     The United States has failed to require that any lessees, or operators located on the leased property, comply with lease terms and applicable regulations as required by 43 C.F.R. § 3161.2.

      i.     The United States has not promoted "the orderly and efficient exploration, development and production of oil and gas" on Plaintiffs' leased properties as required by 43 C.F.R. § 3160.0-4.

      j.     The United States has not taken any action to protect Plaintiffs' leased land from drainage, including requiring offset wells, resulting in the losses of tens of millions of dollars in revenue.

k.    The United States has not properly valued the oil and gas produced from Plaintiffs' leased land, resulting in losses of substantial revenue.

l.    The United States has not collected all income due the Plaintiffs for the lease of their land or, if it has, has not paid that income to Plaintiffs.

m.    The United States has not taken necessary action to prevent waste on Plaintiffs' land and preserve the leased property.

n.    The United States has not required that leased operations be conducted in such a manner that it results in the "maximum recovery of oil and gas" as required by 43 C.F.R. § 3161.2.

o.    The United States has not required that the lessees or the operators located on the leased properties drill and produce such wells as are necessary so that the leases may be "timely and properly developed and produced" in accordance with good economic operating practices in accordance with 43 C.F.R. § 3162.2(c).

p.    The United States has failed to ensure that environmental regulations and standards were met on the Plaintiffs' leased lands, resulting in significant contamination on the Plaintiffs' lands which remains unaddressed in violation of various regulations including 43 C.F.R. § 3161.2 and 43 C.F.R. § 3162.5-1(c).

q.    The United States has failed to terminate leases or otherwise penalize lessees for violation of lease terms and applicable regulations.

## COUNT I

**Breach of Legal Obligation and Trust Duty to Subject Leases for Plaintiffs' Lands to Competitive Advertising and Bidding and Failure to Pay Reasonable Royalties**

24.    All allegations set forth in the preceding paragraphs of this Complaint are hereby incorporated by reference as if fully set forth herein.

25.    The United States is under a fiduciary and statutory duty to subject leases for oil and gas development on Plaintiffs' land to a competitive bidding process.  This duty includes the advertising of leases for the development of those resources on Plaintiffs' land in such a manner that they receive "optimum competition" for bonus consideration. In addition, it has a duty to reject any bid or proposed lease which is not in the "best interest" of Plaintiffs.

26.    The United States has breached these fiduciary and statutory duties. It has not submitted all leases to a competitive bidding process as required by statute and regulation, despite demand by Plaintiffs.  It has not advertised the opportunity to lease Plaintiffs' land in accordance with its own regulations and in a manner that is designed to achieve "optimum competition" for bonus consideration or in a manner that "maximizes their best economic interests." It has accepted leases for Plaintiffs' lands that were not in their best interests.

27.     By reason of the breach of duty by the United States, the royalty and per acre bonus rates for the leases on Plaintiffs' properties have been and continue to be neither competitive nor in their best economic interests.  Plaintiffs have learned that, upon information and belief, the royalty rates on non-Indian oil and gas leases entered into on the Bakken have been 20% or higher than those on Plaintiffs' property. Non-Indian and Indian oil and gas leases entered into on the Bakken provided for per acre bonus rates as much as $16,000, with the majority of leases providing $10,000 per acre bonus rates. In fact, 42,000 acres of Reservation trust land was leased for a $10,000 per acre bonus. However, the Defendants did nothing to ensure Plaintiffs received competitive bonus rates and approved leases of Plaintiffs' trust land that provided bonuses in the range of $300 to $1400 per acre.

28.     By reason of the United States' failure to lease Plaintiffs' land in compliance with its own regulations and in accordance with a competitive bidding process, those leases are

16

void. The United States has been and remains under a continuing duty to remove the lessees from Plaintiffs' property as trespassers so that the Plaintiffs' land and resources may be leased for a competitive amount.

29.    Plaintiffs are entitled to damages for Defendant's breach representing the difference between the reasonable value of the royalty rate and per acre bonus and what they have, in fact, received plus interest as allowed by law.

## COUNT II

### Breach of Legal Obligation and Trust Duty to Properly Value Oil and Gas Production in Determining Royalties

30.    All allegations set forth in the preceding paragraphs of this Complaint are hereby incorporated by reference as if fully set forth herein.

31.    The leases approved by the United States with respect to the oil and gas resources on Plaintiffs' land require that the Secretary value the oil, gas, and natural gas produced and saved from Plaintiffs' land for purposes of calculating royalties.  Moreover, the regulations impose a duty on the part of the United States to properly calculate the value of oil, gas and natural gas produced and saved in calculating the royalty payments due Plaintiffs.

32.    The United States has breached its duty to Plaintiffs by failing to properly calculate the value of those resources produced and saved from Plaintiffs' land.

33.    By reason of Defendants' breach, Plaintiffs' are entitled to such damages as may be proven at trial plus interest as allowed by law.

## COUNT III

### Breach of Legal Obligation and Trust Duty to Maintain Proper Production, Manage and Prevent Drainage

34.    All allegations set forth in the preceding paragraphs of this Complaint are incorporated by reference as if fully set forth herein.

35.     The United States is under a duty, under the terms of the leases on Plaintiffs'
lands, pursuant to its own regulations, and as trustee, to take action to ensure that avoidable
drainage, defined generally as "the migration of hydrocarbons, inert gases (other than helium), or
associated resources caused by production from other wells, " 43 C.F.R. § 3160.0-5, does not
occur on Plaintiffs' property. Those duties include properly inspecting and regulating the leased
premises in accordance with 43 C.F.R. § 3161.2, requiring compliance with lease terms,
requiring operations be conducted to ensure maximum ultimate recovery and prevent waste,
requiring offset wells, and prescribing a proper well spacing program. 43 C.F.R. § 3162.3-1.

36.     The United States  has breached its fiduciary and other legal obligations, and
mismanaged the Plaintiffs' allotted lands, by failing to properly manage, administer and
supervise the lessees of Plaintiffs' leased lands, or the operators located thereon,  in order to
prevent the avoidable loss of oil and gas through drainage.  Plaintiffs have requested
documentation of the well spacing program affecting their property and none has been provided.
Plaintiffs have learned that for six of the leased tracts alone, at least 598,000 barrels or $62.8
million worth of drainage has occurred, and continues to occur, with the United States taking no
action to prevent it.  The Plaintiffs have reason to believe that similar drainage has occurred on
the other tracts.

37.     Defendant's practice of placing a tighter choke on the production of oil on
Plaintiffs' lands has exacerbated its failure to take any action to control drainage from Plaintiffs'
property.   Allowing greater drainage has resulted in substantially lower production than other
wells.

38.     In addition, Defendant has delayed in implementation of requirements, orders and
technological advances such that production on Plaintiffs' lands has been impaired.

18

39.     By reason of these breaches, Plaintiffs have lost substantial revenue and are entitled to such damages plus interest as may be proven at trial.

### COUNT IV

### Breach of Legal Obligations and Trust Duties by Failing to Pay Amounts Due Under Leases

40.     All allegations set forth in the preceding paragraphs of this Complaint are hereby incorporated by reference as if fully set forth herein.

41.     The United States is a under a fiduciary duty as trustee and a legal duty, both under the terms of the leases on Plaintiffs' lands and pursuant to its own regulations, to collect all amounts due under the leases and to pay to the Plaintiffs revenue collected.

42.     The United States has breached its fiduciary and other legal duties.  Upon information and belief the United States, as trustee, has not collected all amounts to which Plaintiffs are entitled under their leases.  In addition, upon information and belief it has not paid to Plaintiffs all amounts which have been collected and to which they are entitled.  An analysis of payment records received from Defendant for a one year period alone identified that Plaintiffs were receiving less from Defendant than operators reported were being produced from Plaintiffs' land. Plaintiffs have reason to believe that they were similarly underpaid for prior years.

43.     In addition, amounts are deducted from Plaintiffs' account statements which are not appropriate and Plaintiffs are provided no legitimate explanation therefor.

44.     By reason of the foregoing, Plaintiffs are entitled to damages plus interest in such amounts as may be proven at trial.

19

## COUNT V

**Breach of Legal Obligations and Trust Duties by Failing to Ensure that Environmental Regulations and Standards Were Met on the Plaintiffs' Leased Lands.**

45.     All allegations set forth in the preceding paragraphs of this Complaint are hereby incorporated by reference as if fully set forth herein.

46.     Since the Plaintiffs' leases were approved by the United States, multiple environmental spills on the Plaintiffs' leased lands have occurred due to the negligence of lessees.  The United States has done nothing in response to them.

47.     The Secretary is bound to approve only leases that assure that the owner's resources will be developed "in a manner  . . . that minimizes any adverse environmental impacts or cultural impacts resulting from such development."

48.     The United States has breached its legal obligations and trust duties, and mismanaged the Plaintiffs' trust land and assets, by failing to ensure that environmental regulations and standards were met on the Plaintiffs' leased lands.  According to its regulations, Defendant must "require that all operations be conducted in a manner which protects  . . . environmental quality," and "to enter orders and impose other requirements on the lessee in order to prevent waste and preserve the property."  Therefore, BIA or BLM serve as the lead agency to ensure clean-up activities are properly conducted in a timely, efficient and safe manner.

49.     Despite the foregoing obligations on the part of the United States, no action has been taken by the United States to rectify the environmental damage to Plaintiffs' property caused by the actions of lessees.

50.     By reason of the foregoing, Plaintiffs are entitled to such damages plus interest as may be proven at trial.

**COUNT VI**

**Breach of Legal Obligations and Trust Duties by Allowing the Lessees to Illegally Deduct Transportation Costs**

51.    All allegations set forth in the preceding paragraphs of this Complaint are hereby incorporated by reference as if fully set forth herein.

52.    The United States breached its legal obligations and trust duties, and mismanaged the Plaintiffs' trust lands and assets by allowing the lessees on the Plaintiffs' oil and gas leases to illegally deduct transportation costs.

53.    The Defendant has allowed and facilitated, and continues to allow and facilitate, the illegal deduction of transportation costs, for the benefit of the lessees, from the Plaintiffs' royalties.  Upon information and belief, the transportation costs were deducted without the lessee's having submitted an "Oil Transportation Allowance Report." The transportation deduction rules specify that "before any deduction can be taken," the lessee must submit an "Oil Transportation Allowance Report," also called a "Form MMS-4110." 30 C.F.R. § 1206.57.

54.    ONRR audits royalty payments and is responsible for determining when companies "improperly determine[] a transportation allowance." 30 C.F.R. § 1206.56.

55.    Upon  information and belief, the Defendant has breached this duty, improperly deducting transportation charges.

56.    As such, the Plaintiffs are entitled to damages plus interest for all transportation costs that were illegally deducted from their royalties.

**COUNT VII**

**Breach of Legal Obligations and Trust Duties by
Exceeding Acreage Limitations on Leases**

57.    All allegations set forth in the preceding paragraphs of this Complaint are hereby incorporated by reference as if fully set forth herein.

58.     Leases for oil and gas are not to exceed 640 acres. 25 C.F.R. § 211.25.

59.     Despite this regulatory limitation, the Secretary has approved leases, under communitization agreements, for leases up to 1,280 acres.

60.     In doing so, the Defendant has breached its legal duty and its fiduciary duty to Plaintiffs by failing to act in their best interests.

61.     By reason of this breach, Plaintiffs have been damaged in such amounts plus interest as may be proven at trial.

**COUNT VIII**

**Breach of Legal Obligations and Trust Duties by Delays in the Drilling of Oil and Gas Wells on Plaintiffs' Leased Land**

62.     All allegations set forth in the preceding paragraphs of this Complaint are hereby incorporated by reference as if fully set forth herein.

63.     Once Plaintiffs' allotted land was under lease, Defendant took no action to require that drilling and completion for oil and gas actually occurred on Plaintiffs' land in a proper and timely manner.

64.      By way of example, over six years expired before drilling and completion activity commenced on Allotment 710A. Plaintiffs were repeatedly told that this would commence but received no explanation for the delay. However, drilling of neighboring allotments proceeded in advance of that of Plaintiffs, resulting in increased drainage from Plaintiffs' land.

65.     By reason of Defendant's breach of its duty to require reasonable and timely drilling and completion on Plaintiffs' land, Plaintiffs have been damaged in such amounts as may be proven at trial plus interest as allowed by law.

**COUNT IX**

**Breach of Legal Obligations and Trust Duties by Failing to Lease the Plaintiffs' Unleased Allotted Land, for Oil and Gas Mining Purposes**

66.     The United States breached its legal obligations and trust duties and mismanaged the Plaintiffs' trust lands and assets by failing to lease all of the Plaintiffs' unleased allotted land for oil and gas mining purposes.

67.     The Plaintiffs own approximately 500 acres of unleased allotted land.  Plaintiffs have requested that Defendant lease this land for oil and gas mining purposes, but Defendant has failed and refused to do so, in breach of its fiduciary obligations as trustee.

68.     By reason of the breach of fiduciary and other legal duties of the United States, the Plaintiffs have been damaged in such amounts plus interest as may be proven at trial.

**COUNT X**

**Breach of Legal Obligations and Trust Duties by Failing to Lease the Plaintiffs Unleased Allotment Land for Grazing Purposes**

69.     All allegations set forth in the preceding paragraphs of this Complaint are hereby incorporated by reference as if fully set forth herein.

70.     The United States breached its legal obligations and trust duties and mismanaged the Plaintiffs' trust lands and assets by failing to lease the Plaintiffs' unleased allotted land for grazing purposes, despite Plaintiffs' request that it do so.

71.     The Plaintiffs own approximately 200 acres of unleased allotted lands with value in regards to grazing.

72.     The Plaintiffs have consistently granted the BIA the authority to permit the leasing of their unleased grazing allotments.

73.     The United States has therefore been obligated to permit and lease the Plaintiffs' grazing lands in a manner that maximizes their best economic interests.

74.     The United States has failed to take any action to lease their significant grazing allotted land interests at any point.

75.     By reason of this breach of duty, Plaintiffs are entitled to have and recover of Defendant such damages plus interest as may be proven at trial.

**Prayer for Relief**

Wherefore the Plaintiffs respectfully pray the Court as follows:

1.     That they have and recover of the Defendant damages in such amounts plus interest as may be proven at trial.

2.     That the costs of this action, including reasonable attorneys' fees, be taxed against Defendant;

3.     For such other and further relief as the Court deems just and proper.


RESPECTFULLY SUBMITTED, this the 13th day of January 2016.

       s/ David C. Smith
       David C. Smith (DC Bar No. 998932)
       Kilpatrick Townsend & Stockton LLP
       607 14th Street, NW, Suite. 900
       Washington, DC 20005-2018
       Telephone:  (202) 508-5865
       Facsimile:  (202) 585-0052
       dcsmith@kilpatricktownsend.com

       *Attorney for Plaintiffs*

*Of Counsel:*

Charles W. Galbraith (DC Bar No. 1028083)
Kilpatrick Townsend & Stockton LLP
607 14th Street, NW, Suite. 900
Washington, DC 20005-2018
Telephone:  (202) 508-5850
Facsimile:  (202) 204-5601
cgalbraith@kilpatricktownsend.com