```
 1            IN THE UNITED STATES COURT OF FEDERAL CLAIMS
 2
 3
 4     ROGER BIRDBEAR, et al.,        )
 5          Plaintiffs,               )
 6          vs.                       )  Case No. 16-75L
 7     UNITED STATES OF AMERICA,      )
 8          Defendant.                )
 9
10
11
12                         Courtroom 7
13             Howard T. Markey National Courts Building
14                     717 Madison Place, N.W.
15                         Washington, D.C.
16                     Monday, February 6, 2017
17                           2:00 p.m.
18
19
20
21          BEFORE:  THE HONORABLE ELAINE D. KAPLAN
22
23
24
25     Deborah Wehr, RPR, Reporter
```

Roger Birdbear, et al. v. USA                                2
                                                        2/6/2017

```
 1                A P P E A R A N C E S
 2
 3    ON BEHALF OF THE PLAINTIFF:
 4         DAVID C. SMITH, ESQUIRE
 5         CHARLES W. GALBRAITH, ESQUIRE
 6         DUSTIN T. GREENE, ESQUIRE
 7         Kilpatrick Townsend & Stockton, LLP
 8         607 14th Street, N.W.
 9         Suite 900
10         Washington, D.C.  20005
11         (202) 508-5865
12         dcsmith@kilpatricktownsend.com
13
14
15    ON BEHALF OF THE DEFENDANT:
16         JODY HELEN SCHWARZ, ESQUIRE
17         U.S. Department of Justice
18         Environment and Natural Resources Division
19         601 D Street, N.W.
20         Washington, D.C.  20004
21         (202) 305-0245
22         jody.schwarz@usdoj.gov
23
24
25    (Appearances continued on next page.)
```

```
 1   APPEARANCES: (Continued.)
 2
 3
 4           HOLLY H. CLEMENT, ESQUIRE
 5           U.S. Department of the Interior
 6           Office of the Solicitor
 7           1849 C Street, N.W.
 8           Mailstop 7357
 9           Washington, D.C.  20240
10           (202) 208-4472
11           holly.clement@sol.doi.gov
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Roger Birdbear, et al. v. USA                                   4
                                                          2/6/2017

     1                    P R O C E E D I N G S
     2                     -    -    -    -    -
     3          (Proceeding called to order, 2:00 p.m.)
     4          THE CLERK:  The Court of Federal Claims is now in
     5   session.  Judge Elaine D. Kaplan presiding.
     6          THE COURT:  Be seated everyone.
     7          THE CLERK:  This is case number 16-75, Birdbear
     8   versus the United States.  Appearing on behalf of the
     9   plaintiff, David C. Smith.  On behalf of the defendant,
    10   Jody H. Schwarz.  This is a status conference.
    11          THE COURT:  Okay.  Well, I'm sorry it took me so
    12   long to get us all in the same room because I see you
    13   all have been very busy.  Well, not busy, as the case
    14   may be.  So I wanted to use this as an opportunity to
    15   try to get some sort of control over the case and see
    16   where we are going, find out what the plaintiffs are
    17   complaining about in terms of discovery and so forth and
    18   so on, and hopefully we'll come out of this with a clear
    19   understanding of where we are.
    20          And I will tell you right now, I haven't had any
    21   Indian trust cases yet.  So I may need to be educated on
    22   some things.  I am familiar with the Cobell litigation.
    23   I watched it as a spectator, but I didn't participate in
    24   it.
    25          So with that said, I want to talk first about

1  these documents and the production of the documents that
2  are the subject of the motion to compel.  So
3  Ms. Schwarz, would you mind, why don't you come on up
4  here and you can tell me who else is at the table with
5  you.
6           MS. SCHWARZ:  Yes, Your Honor.  Also at the table
7  with me is Holly Clement.  She is an attorney with the
8  Department of Interior Office of the Solicitor.  And
9  then also at the table is Jonathan Witmer.  He is a law
10 clerk at my office.
11          THE COURT:  Okay.  So what is going on with these
12 documents?  My impression is that the plaintiffs had
13 asked for these documents quite a while back and there
14 were some agreement to provide them but they still
15 haven't been provided; is that correct?
16          MS. SCHWARZ:  That is not correct, Your Honor.
17 We -- pursuant to the agreement that we had entered
18 into, we produced the documents that Interior had.  And
19 those dealt with plaintiff's land tracts from its --
20 Interior has records that they maintain the interest in
21 and also the leases associated with those land tracts.
22          Plaintiffs' attorneys had pointed out several
23 issues that they had with the production.  We disagree
24 with some of the things that they have said.  They said
25 that the records were disorganized, that they didn't

1   have a way of associating the tracts with the leases,
2   that some of the leases were missing or that there were
3   some assignments that were missing.  We've gone back and
4   searched through the production.  We believe that we can
5   respond to most of the points that have been raised in
6   plaintiffs' motion.
7           Prior to plaintiffs filing the motion, they did
8   contact me to see if we would agree to the motion to
9   compel, if there would be something that we could do.
10  We suggested that rather than filing the motion to
11  compel, instead of going through me as an intermediary,
12  because there are some issues, documents that I am just
13  not familiar with because I too have not dealt with this
14  specific issue, that we should have a sit-down with the
15  Department of Interior and the associate attorney who
16  has been intimately involved in working with the agency
17  to collect the documents in response to what we agreed
18  to do.  And rather than do that meeting, plaintiffs went
19  ahead and filed the motion to compel.
20          We still believe, however, that the issues raised
21  in the plaintiffs' motion to compel can be addressed in
22  a meeting.  In fact, the parties, after this hearing,
23  are going to have a meeting to discuss some of the
24  issues that we've raised because we do believe that
25  there's just some misunderstandings as to what was

1    provided and the interpretation of what was provided.
2         THE COURT:  Okay.  All right.  Mr. Smith, do you
3    want to respond to that?
4         MR. SMITH:  Yes, Your Honor.
5         THE COURT:  You can come on up.
6         MR. SMITH:  Good afternoon, Your Honor.  With me
7    at counsel table is Charles Galbraith.  He is also with
8    my firm, and Dustin Greene.
9         Your Honor, the order in which these documents
10   were produced, I got to be candid with you, was pretty
11   abysmal.  And sitting in the back is a young man who
12   spent a lot of time going through these documents.  It
13   was listed as 7,000 documents.  There were about 1500
14   documents that were missing, and it took him literally
15   weeks.  They weren't divided by plaintiff.  They weren't
16   divided by tract.  There were often hundreds or
17   thousands of pages between one lease and another.  So he
18   had to go through there piece by piece trying to put a
19   lease with a tract.  So we had a very short period of
20   time within which we got those documents and we had to
21   actually go ahead and file a second amended complaint.
22   They weren't in a searchable format.  They were
23   oftentimes single-page PDFs.
24        The government knows how to produce documents and
25   knows that's not the way to do it.  We went ahead and

1  spent weeks going through these documents trying to
2  identify them.  We spent -- sent several letters.  It's
3  in the documents.  We made calls.  We got promised
4  meetings.  And not until we -- actually you scheduled
5  this meeting did we -- there's a meeting scheduled after
6  this, after your conference to go through that.  But we
7  got no response whatsoever.  Promises of documents but
8  nothing.
9          What is missing -- and I handled the Cobell
10 litigation.  I handled it for over a decade.  And what
11 was promised as part of that litigation was when we
12 started that litigation, individual beneficiaries didn't
13 know, never got even an account statement.  They didn't
14 know what they had.  So they started developing these
15 computer systems, something called TAMs.  And now if you
16 go on the Interior website, you can see, we have a
17 system called TAMs where within minutes or days we can
18 produce for you exactly what is on someone's land.
19         So this should be a fairly easy task.  Not
20 something that takes months and months, but something
21 that takes a matter of days.  So every individual in the
22 Indian beneficiary has something called an ITI,
23 individual title report that says this is the land you
24 own.  And it changes every day.  If they acquire a new
25 piece of land, that title ITI changes.  So every time

```
 1   their land changes, the ITI changes.  So Interior should
 2   have those ITIs for every time the status of their title
 3   changes.  We got one of those for one individual
 4   beneficiary, Nelson Birdbear.
 5           THE COURT:  And Ms. Schwarz, why is that?  Why
 6   didn't they get one of those for each one of the
 7   plaintiffs?
 8           MS. SCHWARZ:  First of all, we disagree with many
 9   of counsel's representations.  When we provided the
10   documents to counsel, we gave them a spreadsheet that
11   specifically listed out the tracts of land, the
12   associated leases and any notations.  In going through
13   their motion and the affidavit, it seems that they have
14   entirely ignored the finding aid that we gave them.  The
15   documents were searchable.  Granted, they weren't linked
16   to the spreadsheet, but in the short turnaround that we
17   had -- and this was an informal production that we were
18   under no obligation to do but did it in an attempt to
19   try to avoid multiple grounds of motions to dismiss, we
20   provided that information.
21           In going through it, a lot of the things that
22   they pointed out that they said that we didn't provide,
23   we did provide.  They talk about different
24   communitization agreements --
25           THE COURT:  Well, what about these ITI reports in
```

1  particular?
2          MS. SCHWARZ: As for the ITI report, my
3  understanding is that most of them -- that they were
4  provided but that they were looking at -- the way the
5  plaintiffs have their interests in the land is that one
6  plaintiff has interest that others don't, but for the
7  plaintiffs, they all own the same interest in the land.
8  So when they produced a tract that was associated with
9  the land, that was for all the plaintiffs, because it
10 went to the land and not to a specific individual. But
11 I may have this wrong, which is why I wanted to have
12 them discuss the fact with Interior.
13         And further, in terms of the land status reports
14 on a quarterly basis, plaintiffs do get copies of their
15 land status reports. So it isn't as if Interior hasn't
16 been providing this information. They have been
17 providing this information.
18         Unfortunately, counsel had had a bad experience
19 with Interior in dealing with the Cobell case. Like
20 you, I was not a part of Cobell, but saw it at the tail
21 end. And we have been trying very hard to avoid
22 anything that happened at the beginning of the Cobell
23 case which is why we agreed to try to do this informal
24 production of documents to try to narrow down the claims
25 and get this litigation moving. But rather than get

1  this litigation moving, we have just been getting these
2  motions, motion to compel, motion to strike, motion to
3  do this and a motion to do that.
4         And what we would really like to do is move on
5  with the litigation.  Let us sit down and have the talk.
6  We've tried to do an arrangement before and
7  unfortunately, we couldn't have a meeting before.  I was
8  out in December.  I was hospitalized and was out for a
9  couple of weeks and a colleague had stepped in for me,
10 but she wasn't in a position to really move forward.
11 And then we had another problem where a key person
12 couldn't meet.  But we have been trying diligently to
13 work with plaintiffs to really try to figure out what
14 are your claims, what can we agree to, what can't we
15 agree to, let's move forward.
16        The parties have already submitted a JPS to the
17 Court with suggested dates.  Coming up soon we've
18 proposed February 28th as the date for our initial
19 disclosures.  We are fully prepared to move forward on
20 the date.  But it's hard to focus on that when we are
21 constantly on the defense with some of the
22 mischaracterizations and accusations that are simply not
23 true.
24        THE COURT:  Okay.  Mr. Smith, why don't we let
25 you guys go ahead and sit down with the government and

1  with the people from the Department of Interior rather
2  than me trying to figure this out and see if you all can
3  work through some of these issues.  I think that's
4  probably the best solution.
5          So I am probably going to deny your motion to
6  compel at this point.  I get the point of it.  You've
7  got my attention, and now maybe we'll be able to sort of
8  narrow down the issues and focus more clearly on getting
9  them the documents that they need.  I can't referee the
10 dispute as to whether he is twisting things or you are
11 telling the truth.  You see what I'm saying.  That's
12 kind of a frustrating thing.
13         So why don't we do this.  Why don't we have you
14 work through that.  And do you think that within 30 days
15 of today you can get back to me and let me know whether
16 they have at least gotten that initial sort of stuff
17 that they want, those documents that they want?  If you
18 can give me a joint status report on that in 30 days,
19 and then in the meantime maybe I can go ahead and adopt
20 your schedule for discovery in the case.  Does that work
21 for you?
22         MR. SMITH:  That works, Your Honor.  I think if
23 there's a deadline, I think that works.
24         THE COURT:  Okay.  All right.
25         MS. SCHWARZ:  Can I raise one more issue?

```
 1            THE COURT:  Sure.
 2            MS. SCHWARZ:  Plaintiffs, on Friday, filed a
 3   motion to strike affirmative defenses.  Rather than
 4   strike our affirmatives defenses, can we seek leave to
 5   refile them?  Some of the defense that were filed are
 6   simply things that we can't wave like no standing,
 7   sovereign immunity, statute of limitations.  But to the
 8   extent that we can -- my favorite is that we were too
 9   specific.  But apparently minds can have differing
10   approaches as to those.
11            THE COURT:  Well, some of it wasn't very
12   specific, you know, collateral estoppel.  These guys all
13   opted out of the Cobell litigation.  Yeah, I was going
14   to suggest that you just file -- or we could keep filing
15   briefs about the motion to strike.  But maybe it would
16   be better if you just amended your answer.  Can you do
17   that?  You want to wait until the documents are in or
18   what kind of timeframe?
19            MS. SCHWARZ:  Can we wait until the documents are
20   in?
21            THE COURT:  Why don't we do that at the same
22   time.  All right.  That sounds good.
23            Let's see what else I wanted to talk to you
24   about.  I know, I wanted to ask about the third-party
25   discovery.  I don't want to get into it in detail, but
```

```
 1   my hope was that once you all were working together and
 2   the relationship was smoother in terms of exchanging
 3   information that it might be that some of the
 4   third-party discovery we wouldn't need anymore.  Or I
 5   don't know if some of them have complied with your
 6   subpoenas; is that correct?
 7           MR. SMITH:  We probably sent out about maybe a
 8   dozen subpoenas, but I think there's still probably the
 9   major three players which are Enerplus, EOG and
10   Marathon.  And most of them are smaller.  They have
11   perhaps sold to these three entities.  That's
12   information we do need.  We have -- we believe the
13   information that the government has and the oil
14   companies have are different, and that's what we are
15   trying to identify.
16           THE COURT:  It looked like some of the
17   information was exchanges of information with the
18   government.  So it might be that the government already
19   had -- that you'll get the information through the
20   government.
21           MR. SMITH:  I'm not confident we are going to get
22   that information from the government.
23           THE COURT:  Well, you have PTSD, right?
24           MR. SMITH:  It seems to take a whole lot longer
25   to get it through the government than if they have got
```

Roger Birdbear, et al. v. USA                                  15
                                                          2/6/2017

 1   it.  It seems to me they can make it available.
 2         THE COURT:  I understand.  Okay.  So then what
 3   we'll do is 30 days to work this out, talk amongst
 4   yourselves, and then we'll adopt the rest of the
 5   schedule.  And then maybe I'll set up another status
 6   conference so we can talk after the 30 days are up to
 7   make sure everything is on track.
 8         Is there anything else?
 9         MS. SCHWARZ:  Nothing, Your Honor.
10         THE COURT:  Okay.  Keep those briefs coming.  I'm
11   just kidding.  Thank you.
12         (Whereupon, the proceedings at 2:12 p.m. were
13   concluded.)
14
15
16
17
18
19
20
21
22
23
24
25

Roger Birdbear, et al. v. USA                                           16
                                                                    2/6/2017

 1                    CERTIFICATE OF TRANSCRIBER
 2
 3
 4         I, Deborah Wehr, court-approved transcriber,
 5    certify that the foregoing is a correct transcription
 6    from the official digital sound recording of the
 7    proceedings in the above-titled matter.
 8
 9
10
11
12    DATED:  2/9/2017           s/Deborah Wehr
13                               DEBORAH WEHR, RPR
14
15
16
17
18
19
20
21
22
23
24
25