```
 1            IN THE UNITED STATES COURT OF FEDERAL CLAIMS
 2
 3
 4   ROGER BIRDBEAR, et al.,        )
 5        Plaintiffs,               )
 6                 vs.              ) Case No.
 7   THE UNITED STATES OF AMERICA,  ) 16-75L
 8        Defendant.                )
 9
10
11
12
13                        Suite 705
14          Howard T. Markey National Courts Building
15                 717 Madison Place, N.W.
16                     Washington, D.C.
17                  Friday, March 24, 2017
18                       11:00 a.m.
19
20
21
22        BEFORE:  THE HONORABLE ELAINE D. KAPLAN
23
24
25   Transcribed by:  George Quade, CERT
```

Roger Birdbear, et al. v. USA                                         2
                                                              3/24/2017

```
 1   APPEARANCES:
 2   ON BEHALF OF THE PLAINTIFFS:
 3          DAVID C. SMITH, ESQ.
 4          DUSTIN T. GREEN, ESQ.
 5          Kilpatrick, Townsend & Stockton, LLP
 6          607 14th Street, NW
 7          Suite 900
 8          Washington, D.C. 20005
 9          (202) 508-5865 / (202) 585-0052 (fax)
10          dcsmith@kilpatricktownsend.com
11
12
13   ON BEHALF OF THE DEFENDANT:
14          JODY SCHWARZ, ESQ.
15          BRIAN COLLINS, ESQ.
16          U.S. Department of Justice - ENRD
17          601 D Street, NW
18          Post Office Box 663
19          Washington, DC  20044-0663
20          (202) 305-0245 / (202) 353-2021 (fax)
21          jody.schwarz@usdoj.gov
22
23   ALSO PRESENT:
24          Holly Clement, Esq., Department of Interior
25          Sean Gaines, DOJ IT Project Manager
```

```
 1                    P R O C E E D I N G S
 2                     -    -    -    -    -
 3              (Proceedings called to order at 11:00 a.m.)
 4              THE COURT:  All right.  This is a status
 5    conference in Birdbear v. The United States, Number 16-
 6    75.  I read the joint status report, and I just had a
 7    couple of questions to ask so I can figure out where
 8    things are, at least with respect to the stipulation that
 9    you all entered.
10              So I still can't tell -- I can't tell, Mr.
11    Smith, from your part of the joint status report whether
12    you view the Government as now having supplied Plaintiff
13    with everything that was required by the stipulation you
14    all entered.  Mr. Smith?
15              MR. SMITH:  Your Honor, the -- we got, you
16    know, virtually all the documents.  It was a flurry of
17    seven emails and two disks the day the joint status
18    report was due, and the last one was at 6:30 at night.
19              THE COURT:  Right.
20              MR. SMITH:  And we were still going through it
21    at -- when we prepared the joint status report.  We've
22    gone through it, and that -- that day I had emailed Ms.
23    Schwarz about three documents that were still missing.
24    And she indicated that they would be provided, and they
25    have not been provided.  So to the best of our knowledge,
```

1   there are three documents -- one lease, one
2   communitization agreement, and one assignment -- that, to
3   the best of our knowledge, have not been produced.
4              THE COURT:  All right.  And, Ms. Schwarz, is
5   that correct?
6              MS. SCHWARZ:  I don't believe so, Your Honor.
7   We went through -- as Mr. Smith said, we went through all
8   of his emails.  He had followup emails regarding
9   documents Interior from the -- they had followup emails
10  regarding the contents as documents, and we -- you know,
11  it's my understanding that we produced everything in
12  response to --
13             THE COURT:  What about these three particular
14  documents that he's just mentioned?
15             MS. SCHWARZ:  I do not know.  They -- he sent
16  me an email about a communitization agreement.  We
17  responded with the Bates numbers where it was located.
18  There's a couple leases.  We provided those leases.  And,
19  also, the assignment, if Mr. Smith wants to email me
20  those documents again so that we can find them in the
21  production, you know, we're more than willing to do that.
22             THE COURT:  Okay.  Yes, Mr. Smith?
23             MR. SMITH:  Yeah.  This was a -- on the date of
24  the status report, I emailed her.  On that morning, or
25  actually the afternoon, Ms. Schwarz had produced the

```
 1   title status report for Tract 473.  And in that were the
 2   list of the -- an oil and gas lease, for Whiting, a
 3   communitization agreement for Exteo Energy and an
 4   assignment, and she responded that day saying she would
 5   produce them by email.  That was a week ago, and we have
 6   not -- we have not had any response since that time.  So,
 7   Ms. Schwarz, those are the ones I'm referring to.
 8              THE COURT:  All right, Ms. Schwarz, can you
 9   follow up on that and get those to them?
10              MS. SCHWARZ:  I can do that, Your Honor.
11              THE COURT:  Okay.  Let me just ask you another
12   thing, Ms. Schwarz.  You know, I did put in a March 9th
13   deadline for the Government to produce the documents, and
14   apparently the deadline wasn't met.  I'm just wondering
15   why you didn't think you should maybe file a request to
16   extend the deadline?
17              MS. SCHWARZ:  We met that deadline.  We -- you
18   know, we did a -- for the documents that were under the
19   stipulations, we produced those documents two weeks ahead
20   of time in order to give Plaintiff the opportunity to
21   look at them and to let us know by the production
22   deadline if they thought that there was anything wrong
23   with them.
24              Further, the specific email production that
25   counsel refers to from March 9th, the one that we did
```

```
 1   send later, was not part of the stipulation.  It was
 2   related to letters that counsel had sent to us.  I
 3   believe the date was February 12th regarding a temporary
 4   right-of-way for a water line that had been put on one of
 5   his Plaintiff's tracts.
 6           We, as a courtesy, even though rights-of-way
 7   are not at issue in the lawsuit, this is not at issue in
 8   the lawsuit, the Department of the Interior followed up
 9   and provided them information regarding those temporary
10   water lines that were put on those two tracts and gave
11   them information about a notice of trespass that had been
12   sent out and sent an explanation as to why they did not
13   determine that the other tracts had been subject to
14   trespass.
15           THE COURT:  All right.
16           MS. SCHWARZ:  And, so, those particular
17   documents had nothing to do with the supplemental
18   production.  To the extent that Plaintiff pointed out
19   things in the supplemental production, it wasn't because
20   we had any attempts to not follow the Court's order, but
21   rather those were -- this is a very large production of
22   documents coming from different places at different
23   times.  And, so, to the extent Plaintiff raised issue
24   with them, we followed up as quickly and expediently as
25   we possibly could.
```

```
 1            THE COURT:  Okay.  Well, Mr. Smith, I could
 2   give you a chance to respond to that, and you might say
 3   that the right-of-way agreements were covered by the
 4   stipulation, but I'd rather actually just kind of move
 5   forward on this.  I get that there have been a lot of
 6   hiccups here, and it seems like some dropping of the ball
 7   between the Government and the Department of the Interior
 8   -- excuse me, the Department of the Interior is part of
 9   the Government -- between the Justice Department and the
10   Department of the Interior.  But it sounds like other
11   than the three documents that are -- we discussed
12   earlier, that at least the stipulation has now been
13   fulfilled and we can move forward with formal discovery.
14            Am I correct about that, Mr. Smith?
15            MR. SMITH:  Yeah, you know, and if I could just
16   speak, you know, this has been extremely frustrating --
17            THE COURT:  Right.
18            MR. SMITH:  -- to say the least.  It seems like
19   it's without a deadline, and Ms. Schwarz is simply wrong.
20   We've been sending the same list of documents and
21   letters, November 30th, December 6th, January 12th,
22   February 13th, and then again in early March, the same
23   list of 35 to 40 documents.  And after the February 6th
24   conference, we got -- between that and your March 9th
25   order, we got five of those documents.  The rest we all
```

```
 1    received the day of the status report in this flurry of
 2    emails and document productions.
 3              And that is frustrating, when they disregard
 4    the stipulation and disregard this Court's order.  And
 5    it's been expensive for our clients to undergo that kind
 6    of -- those kind of delays.  And I'll just put that out
 7    there.
 8              THE COURT:  All right.  I understand what
 9    you're saying.  Let me ask you a question, Mr. Smith.
10    The amended complaint lists about 89 tracts of land in
11    which the Plaintiffs have an interest.  I think that's at
12    paragraph 28.  Do we know yet whether that list is
13    complete?
14              MR. SMITH:  To the best of our knowledge, that
15    is a complete list of the properties.
16              THE COURT:  Okay.  And have you received all of
17    the lease agreements that cover those tracts of land as
18    part of the stipulation?
19              MR. SMITH:  Except for the ones that I
20    mentioned earlier on this call.
21              THE COURT:  Okay, okay.  Okay.  And let me ask
22    you another question, Mr. Smith.  Have you -- I know you
23    issued a bunch of third-party subpoenas.  And have you
24    been having -- have you been receiving responses back
25    from the third parties, I mean, other than EOS, which has
```

1    filed a motion to quash?
2           MR. SMITH:  We -- and I don't know the exact
3    number.  We had issued about ten third-party subpoenas.
4    A number of those were no longer lessees or provided some
5    documentation.  But the primary ones are EOG and
6    Enerplus.
7           THE COURT:  EOG, I'm sorry, yeah.
8           MR. SMITH:  Yeah.  And my thought was to, now
9    that we had these documents, to -- and have a better idea
10   of who was leasing which properties, were to go back and
11   talk to them and see if we can't maybe refine those, if
12   they are interested in having those discussions.
13          THE COURT:  Okay.  All right.  So you might --
14   you're saying you're going to go back to them and talk
15   about potentially narrowing the request?
16          MR. SMITH:  Yeah, narrowing the request.  Now
17   that we know who was actually leasing --
18          THE COURT:  Yeah, okay.
19          MR. SMITH:  -- each particular allotment.
20          THE COURT:  Okay.  All right.  I think that's a
21   good idea.  Great.
22          All right.  So the formal discovery process has
23   started now, and I'm wondering if I should sort of set us
24   up on a every two months or so -- every 60 days or so
25   that we just have a status conference to make sure

```
 1   everything is moving smoothly.
 2             Ms. Schwarz or Mr. Smith, do you have any
 3   thoughts about that?
 4             MR. SMITH:  I think that would be -- I'm sorry.
 5             THE COURT:  Sorry, I should have identified one
 6   of you.  I always forget I'm on the phone.
 7             Mr. Smith, why don't you go ahead.
 8             MR. SMITH:  Yes, that would be fine with us,
 9   Your Honor.
10             THE COURT:  Okay.  And, Ms. Schwarz?
11             MS. SCHWARZ:  That would be fine with us.
12             THE COURT:  Okay.
13             MS. SCHWARZ:  We would like to have a meet-and-
14   confer and will talk to Mr. Smith afterwards today about
15   they have served their -- you know, their first set of
16   interrogatories and request for production.  So we wanted
17   to talk to them about, you know, scheduling some of the
18   production and receipt of documents, and also emails to
19   get the search terms.
20             THE COURT:  Okay.  All right.  Sounds -- Mr.
21   Smith, did you want to say something?
22             MR. SMITH:  No, that sounds good with us.
23             THE COURT:  Okay, all right.  So it sounds like
24   we're on hopefully a good track now, despite the bumps
25   over the last year or so.  So I will issue an order today
```

1    that just sets up the schedule for status conferences and
2    maybe status reports every 60 days.
3            All right.  Is there anything else?
4            (No response.)
5            THE COURT:  Okay.  I don't hear anything.
6    Well, thank you guys very much.  Bye-bye.
7            MS. SCHWARZ:  Thank you, Your Honor.
8            MR. SMITH:  Thanks.
9            (Whereupon, at 11:12 a.m., the hearing was
10   adjourned.)
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Roger Birdbear, et al. v. USA                                              3/24/2017

```
                                                                        12

 1                    CERTIFICATE OF TRANSCRIBER
 2
 3            I, George Quade, court-approved reporter,
 4    certify that the foregoing is a correct transcript from
 5    the official electronic sound recording of the
 6    proceedings in the above-titled matter.
 7
 8
 9
10    DATE:   6/8/2017            s/George Quade
11                                GEORGE QUADE, CERT
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```