1                IN THE UNITED STATES COURT OF FEDERAL CLAIMS

2

3

4    ROGER BIRDBEAR, et al.,              )

5              Plaintiffs,               )

6        vs.                             ) Case No. 16-75L

7    THE UNITED STATES OF AMERICA,       )

8              Defendant.                )

9

10

11

12                         Suite 705

13          Howard T. Markey National Courts Building

14                  717 Madison Place, N.W.

15                      Washington, D.C.

16                  Wednesday, June 28, 2017

17                         2:00 p.m.

18                  Telephonic Status Conference

19

20

21          BEFORE:  THE HONORABLE ELAINE D. KAPLAN

22

23

24

25   Transcribed by:  George Quade, CERT

2

Roger Birdbear, et al. v. USA                                    6/28/2017

```
 1    APPEARANCES:

 2    ON BEHALF OF THE PLAINTIFFS:

 3              DAVID C. SMITH, ESQ.

 4              DUSTIN GREENE, ESQ.

 5              Kilpatrick, Townsend & Stockton, LLP

 6              607 14th Street, NW

 7              Suite 900

 8              Washington, D.C. 20005

 9              (202) 508-5865

10              (202) 585-0052 (fax)

11              desmith@kilpatricktownsend.com

12

13    ON BEHALF OF THE DEFENDANT:

14              JODY H. SCHWARZ, ESQ.

15              DEDRA CURTEMAN, ESQ.

16              U.S. Department of Justice - ENRD (G)

17              Post Office Box 663

18              601 D Street, NW

19              Washington, D.C. 20004-0663

20              (202) 305-0245

21              (202) 353-2021 (fax)

22              jody.schwarz@usdoj.gov

23

24

25
```

3

Roger Birdbear, et al. v. USA                                    6/28/2017

1    APPEARANCES (Continued):

2

3    ON BEHALF OF EOG:

4              ROBERT S. THOMPSON, III, ESQ.

5              Greenberg Traurig, LLP

6              1200 17th Street

7              Suite 2400

8              Denver, Colorado  80202

9              (303) 685-7448

10             thompsoniii@gtlaw.com

11

12   ON BEHALF OF WHITING RESOURCES CORPORATION:

13             KEITH D. TOOLEY, ESQ.

14             JENS JENSEN, ESQ.

15             Welborn Sullivan Meck & Tooley, P.C.

16             1125 17th Street

17             Suite 2200

18             Denver, Colorado  80202

19             (303) 830-2500

20             (303) 832-2366 (fax)

21             ktooley@wsmtlaw.com

22

23

24   ALSO PRESENT:  Holly Clement, Department of Interior

25

Roger Birdbear, et al. v. USA                                    6/28/2017

```
 1                    P R O C E E D I N G S
 2                    -   -   -   -   -
 3            (Proceedings called to order at 2:00 p.m.)
 4            THE COURT:  Good afternoon, everyone.  This is
 5    Birdbear v. The United States, Number 16-75.  And we're
 6    going to have a hearing or a conference on two motions to
 7    quash subpoenas.  And so let me just take a roll call and
 8    get everyone to give their appearance for the record.
 9            First starting with the Plaintiff?
10            MR. SMITH:  Yes, Your Honor.  This is David
11    Smith.  I believe Mr. Dustin Greene is also on the line.
12            THE COURT:  Okay.
13            MR. GREENE:  I am, Your Honor.
14            THE COURT:  Okay.  And for EOG?
15            MR. THOMPSON:  Yes, ma'am.  This is Robert
16    Thompson.
17            THE COURT:  Robert Thompson.
18            And for Whiting?
19            MR. TOOLEY:  Good afternoon, Your Honor.  Keith
20    Tooley and Jens Jensen for Whiting Resources Corporation.
21            THE COURT:  Keith Tooley?
22            MR. TOOLEY:  Yes.
23            THE COURT:  Okay.  And for the Government?
24            MS. SCHWARZ:  Good afternoon, Your Honor.  This
25    is Jody Schwarz.  Also present with me is Dedra Curteman,
```

Roger Birdbear, et al. v. USA                                    6/28/2017

1    who is an attorney with the Department of Justice, and

2    Holly Clement, who is with the Solicitor's Office,

3    Department of the Interior.

4         THE COURT:  Okay.  Well, I've got two motions

5    to quash the subpoena in front of me, and I've looked at

6    the motions and the responses.  I looked at the subpoena.

7    And it appears to me that the documents that the

8    Plaintiff is seeking -- Plaintiffs are seeking are

9    certainly relevant to the case.

10        It appears to me that the major issue here is

11   one of burden to the third parties from producing the

12   documents that the Plaintiffs are seeking.  And I think

13   the burden argument appears to fall into two general

14   categories.  First, that the Plaintiffs could get at

15   least some of the documents from the Government or from

16   public sources, and then second, in any event, it's

17   going to be very time-consuming and burdensome for the

18   EOG or Whiting to produce the documents that were

19   requested.

20        So I want to -- I know there's also some

21   confidentiality issues, but I feel like that can be

22   addressed through a protective order.  So I want to focus

23   our discussion on the burden right now.

24        And so, Mr. Thompson, for EOG, how -- how does

25   EOG store these records?  I assume -- are they stored

Roger Birdbear, et al. v. USA                                    6/28/2017

1    electronically?

2              MR. THOMPSON:  Portions of EOG's records are

3    stored electronically, Your Honor.  Portions of them are

4    not.  And I can't actually speak to how that search would

5    occur through the electronic documents.  I know that many

6    of these documents are identified by lease number or CA

7    number, not track number --

8              THE COURT:  Okay.

9              MR. THOMPSON:  -- which are referenced in the

10   Plaintiff's complaint.

11             THE COURT:  Okay.  Let me stop -- let me stop

12   you right there and let me ask Plaintiffs or the

13   Government if there's a way to provide EOG and possibly

14   Whiting, if it needs it as well, with an identification

15   of what lease numbers apply to each tract.  Mr. Smith?

16             MR. SMITH:  Yes, we can provide lease numbers.

17   And, in fact, I think that has already been provided.  We

18   provided copies of the leases.

19             THE COURT:  Okay.

20             MR. SMITH:  They should have that information.

21             THE COURT:  Okay.  So what difference does it

22   make that you then keep it by lease number, Mr. Thompson?

23             MR. THOMPSON:  That would not, Your Honor.  I

24   think the issue here with regard to if we're speaking to

25   burden is the scope of the subpoena.  The subpoena as

Roger Birdbear, et al. v. USA                                    6/28/2017

1    originally issued applies to the entire Fort Berthold

2    Indian Reservation and also the entire State of North

3    Dakota.

4             THE COURT:  Well, I think there's at least

5    -- there's maybe one document request that applies to

6    the entire state of North Dakota, but most of the

7    requests seem to be applicable only to the particular

8    tracts of land on which there are leases.  And am I

9    correct that --

10            MR. THOMPSON:  I would beg to disagree, Your

11   Honor.

12            THE COURT:  You don't have to beg.

13            MR. THOMPSON:  The substantial request applied

14   to the entire Fort Berthold Indian Reservation.

15            THE COURT:  Okay.

16            MR. THOMPSON:  And the Plaintiffs made an

17   effort, I believe, to try to pull back from that by

18   seeking information in a three-mile radius --

19            THE COURT:  Right --

20            MR. THOMPSON:  -- of the tracts.  But, Your

21   Honor, that covers 171 wells, 31,725 acres, and is not

22   tied -- any property within three miles of the

23   Plaintiff's six tracts which total about, I believe,

24   1,800 acres.

25            THE COURT:  So there are six --

Roger Birdbear, et al. v. USA                                    6/28/2017

1          MR. THOMPSON:  So when we're talking about the

2     Plaintiff's tract --

3          THE COURT:  So we're talking about just six

4     tracts with respect to EOG?  Six tracts?  And everything

5     within a three-mile radius?

6          MR. THOMPSON:  Yes, ma'am.  And that's the

7     31,725 acres and 171 wells.

8          THE COURT:  Well, that's a lot of acres.  But I

9     don't know if that makes it any more burdensome --

10    terribly burdensome that there's a lot of acres.  I think

11    the Plaintiffs have supplied a reason why they need the

12    information about the leases within three miles.  Now, I

13    understand when the subpoena was first issued, we had a

14    little less specificity.  But it seems as though the

15    Plaintiffs have made an effort to narrow the subpoena and

16    to make it less burdensome for the -- for EOG and for the

17    other -- for the other companies.

18         So I guess -- my thought is with respect to

19    the information, the documents, that can be obtained

20    from the Government or from public sources, I was

21    trying to think about how to address that.  The only

22    thing I could think of was to see if the Plaintiffs

23    could give EOG and Whiting a list of the documents

24    that they've been provided by the Government in

25    discovery.  And it could list the documents by title

Roger Birdbear, et al. v. USA                        6/28/2017

1    or description and identify the number of pages in each

2    document so you wouldn't be producing anything that was

3    duplicative.

4          But I'm not sure if that's really going to help

5    you very much, EOG or Whiting, because you'd still have

6    to look at the documents and look in the files.  Am I

7    right about that?

8          MR. THOMPSON:  You are correct, Your Honor.

9          THE COURT:  But I don't know how to solve that

10   problem because I think everyone would agree, probably

11   the Government reluctantly, that the Department of the

12   Interior's records are not in terribly good shape.  And

13   so I don't think -- yes?

14         MS. SCHWARZ:  Yes, Your Honor.  I don't mean to

15   interrupt --

16         THE COURT:  Sure, that's okay.

17         MS. SCHWARZ:  -- but we would 100 percent

18   disagree with that statement.

19         THE COURT:  Okay.

20         MS. SCHWARZ:  The records are very good.  It's

21   the fact they're voluminous and it takes time to copy,

22   but the agency has been very diligent in maintaining the

23   records.  And, you know, even past problems that

24   Plaintiff has alluded to in previous conferences simply

25   are inapplicable to this case in that the documents that

Roger Birdbear, et al. v. USA                              6/28/2017

1    Plaintiff had requested (inaudible) has been producing
2    them in a timely manner, and they, in fact, exist.  And
3    we would say that there's no record problems on our end.
4              THE COURT:  Mm-hmm, okay.
5              Mr. Smith, is there any reason why the -- we
6    would require the third parties to produce to you
7    documents that you already have because they've been
8    produced by the Government?
9              MR. SMITH:  Your Honor, respectfully we have
10   not received that many -- or I'll rephrase it.  We
11   received documents from the Government, but, you know,
12   we're halfway through the discovery period and just
13   immediately before this hearing we received the first
14   production records from our own properties.  We've
15   received almost nothing from any of the adjacent
16   properties.
17             It's coming in at an extremely slow pace and
18   much of the information we need to perform a drainage
19   analysis is simply not there.  And, you know, with
20   respect to the records -- and I don't want to get into
21   an argument about the quality of the records, but one
22   of the reasons that Mr. Birdbear and the Birdbear
23   family filed this action was because of a discrepancy
24   between what their royalties were and what the Government
25   was saying the production was on their land and what --

Roger Birdbear, et al. v. USA                                    6/28/2017

1    what was being reported by the operators.  And they

2    actually hired a company to try to sift through that, and

3    there was as much as maybe 20 percent or more

4    discrepancy.

5            So there is a discrepancy on production between

6    the various sources, and the only way to get down to that

7    is to get to the source of the information, which is the

8    operators.

9            THE COURT:  And, Mr. Smith -- not Mr. Smith.

10   Yes, Mr. Smith.  I assume you've received a number of

11   documents from the Government so far that are the same

12   documents that you're requesting in the subpoena.  Am I

13   correct?  At least some documents.

14           MR. SMITH:  Yeah.  I mean, particularly with

15   respect to the first request, which is copies of leases

16   and things like that, we've received that.

17           THE COURT:  Okay.  So you don't need that

18   anymore, right?

19           MR. SMITH:  They don't need that anymore.

20           THE COURT:  Okay.  And are there other

21   categories of document requests where you're requesting

22   documents from -- that theoretically the Department of

23   Interior should have where you've already received the

24   documents?

25           MR. SMITH:  You know, honestly, I looked

Roger Birdbear, et al. v. USA                                6/28/2017

    1    through this request in advance of the hearing --

    2              THE COURT:  Mm-hmm.

    3              MR. SMITH:  -- and, you know, perhaps we'll get

    4    to that sometime.  But things like e-mails with EOG or e-

    5    mails with Whiting, you'd think the Government would

    6    have, but we've never received any of those.

    7              THE COURT:  Did you -- you requested those?

    8              MR. SMITH:  Yeah, yeah.

    9              THE COURT:  And, Ms. Schwarz, what's up with

   10    those?

   11              MS. SCHWARZ:  As Your Honor can see from the

   12    court docket, the parties just recently finished up our

   13    EFI order governing the production of electronic

   14    information.

   15              THE COURT:  Right.

   16              MS. SCHWARZ:  So with that, you know, we have

   17    search terms, custodians that we've agreed upon with the

   18    Plaintiffs.  And so right now we're in the process of

   19    pressing all that data if we haven't provided it

   20    previously because we were in the process of negotiating

   21    the search terms and those custodians.

   22              THE COURT:  Mm-hmm.

   23              MS. SCHWARZ:  And then the documents that

   24    they received are the documents that they've requested.

   25    In addition to drainage, Plaintiffs have sought several

Roger Birdbear, et al. v. USA                    6/28/2017

```
 1   other accounts related to royalties, related to
 2   readings, related to takings, and Plaintiffs have
 3   requested documents or interrogatories regarding all
 4   their claims.
 5          We can't segregate our discovery.  We have to
 6   respond in course as documents come up.  We've been
 7   giving a rolling production of documents to Plaintiff.
 8   We've been pretty much providing data to them every week.
 9   I don't think we did it the past week.  I know we served
10   discovery on them.  And so to say that it's going at a
11   very slow pace that we're halfway through I think does
12   disservice to the actual process that is going on and
13   what the Government has produced to them.
14          THE COURT:  Okay.
15          MR. SMITH:  I don't want to get in a dispute
16   with the Government during this hearing.  There's no need
17   for that.
18          THE COURT:  Okay.
19          MR. SMITH:  But, you know, I'm going through
20   here and there are not many documents that were requested
21   that we've actually received from the Government.
22          THE COURT:  Well, all right.  But it sounds
23   like that's not necessarily because they've lost the
24   documents, but they're in the process of producing them
25   and they expect to produce whatever you've requested.  Am
```

Roger Birdbear, et al. v. USA                        6/28/2017

1    I correct about that?

2          MR. SMITH:  That's correct.

3          THE COURT:  Okay.

4          MR. SMITH:  So the extent they're requesting --

5    we've requested electronic communications with the

6    Government, you know, I'm willing to -- I have no problem

7    waiting to see what -- make sure the Government provides

8    them.  But it seems like when they're searching for

9    records they're going to come up with those anyway.

10          THE COURT:  Mm-hmm.  Well, it might be that

11   there's some categories of documents that you're

12   requesting in here that we can wait on and give the

13   Government time -- give the Government time to produce

14   the documents for you so that you don't have to make a

15   request from the third parties.  That's a possibility.

16   And I'm starting to think that might be a good idea.

17          But let me ask about the -- most of the

18   categories, or many of the categories of information in

19   here, are not -- don't involve communications with the

20   Government or things that the Government should be able

21   to produce in discovery, Mr. Thompson.  So what is your

22   objection as to those other categories of documents?

23   It's just the general, it's going to be -- it's

24   burdensome and a lot of property and all that.

25          MR. THOMPSON:  I think there's a couple of

Roger Birdbear, et al. v. USA                        6/28/2017

1    responses to your inquiry, Your Honor.

2                 THE COURT:  Okay.

3                 MR. THOMPSON:  I would refer the Court to the

4    Holte affidavit, Docket Number 45-2.

5                 THE COURT:  Right.

6                 MR. SMITH:  In which Mr. Holte identified 26 of

7    the 33 requests, 20 of the requests go to documents in

8    the Government's possession.  And there are another set

9    of --

10                THE COURT:  Well, I actually -- when we went

11   through the documents -- and I don't think I found -- I

12   mean, think -- I didn't find 20.  I mean, I think we

13   found some requests that maybe some of the documents

14   would be in the Government's possession, but other's

15   wouldn't.  The request covered more -- both things that

16   would be in the Government's possession and things that

17   would not.  But in any event, I'm sorry to interrupt you.

18   Go ahead.

19                MR. THOMPSON:  No, you're fine.  And there are

20   a number of requests that are, of course, available on

21   the NDIT website as opposed to requiring the EOG to

22   expend its time and resources to identify documents that

23   are available on the NDIT website.  But in addition,

24   because we were just speaking to e-mails, the requests at

25   this juncture also seek not only communications between

Roger Birdbear, et al. v. USA                                    6/28/2017

1    EOG and the Government but EOG's internal communications,

2    internal e-mails, internal studies.  That could be --

3    that would be just an inordinate amount of work to

4    determine what internal e-mails in one company of 3,000

5    or more people have anything to do with the Plaintiffs'

6    tracts.

7              THE COURT:  Well, couldn't you agree on search

8    terms with the Plaintiff?  I mean, why does -- it's just

9    pressing buttons, right, and then looking through the

10   documents, obviously.  But, I mean, this is always true

11   with electronic discovery.

12             MR. THOMPSON:  And I cannot speak, Your Honor,

13   to EOG's capabilities within that regard.  You may well

14   be very correct -- may well be correct.  I'm just

15   ignorant in that regard.

16             THE COURT:  Okay.  Well, I mean, if you're

17   saying it's burdensome, I think we have to be able to

18   know if it's any more than just coming up with search

19   terms and pressing buttons.  But, okay.  Mr. -- I'm

20   sorry, the attorney for Whiting, did you have anything

21   you wanted to add?

22             MR. TOOLEY:  Yes, I do, Your Honor.  Thank

23   you very much.  In response to your earlier question,

24   there is a large amount of data that is electronically

25   stored.  There's also hard copy data.  My client is the

Roger Birdbear, et al. v. USA                                   6/28/2017

```
 1    successor to another company, Kodiak, that's actually
 2    been acquired and has a new name, but there are some
 3    complexities given the lack of any time constraint
 4    regarding gathering up these documents even on the
 5    electronic basis.
 6              The other thing that really struck me about the
 7    subpoena is the extreme breadth of what has been
 8    requested.  In many ways it requests that the company re-
 9    create 11 years of all the business that it's done, down
10    to the details of mud logs and casing and --
11              THE COURT:  But it's only as to the tracts of
12    land on which the Plaintiffs have leases.  Right?
13              MR. TOOLEY:  Right.
14              THE COURT:  Not all the business it's done.
15              MR. TOOLEY:  And the adjacent tracts, too --
16              THE COURT:  Right.
17              MR. TOOLEY:  -- that were originally put to us.
18    It was very broad and we've been trying to work with
19    Plaintiff's counsel to narrow that down so it's at least
20    manageable.  But even when it's manageable, this task is
21    going to be enormous.  And I guess my observation is I
22    think it was a very wise suggestion to have some lists or
23    categories of documents that the Government is providing
24    so that the -- these 12 or 13 companies who are involved
25    in the suit don't have to duplicate what's already being
```

Roger Birdbear, et al. v. USA                                6/28/2017

```
 1    done.

 2              THE COURT:  Okay.

 3              MR. TOOLEY:  So that's a big part of our

 4    concern.  I asked my client what's the manhours required

 5    for this, and it would be 1,900 hours as the subpoena was

 6    originally proposed.  That's, again, an estimate, but

 7    it's an enormous amount of time, energy, expense, and I

 8    don't think there's much purpose --

 9              THE COURT:  Could you hold on a second?  Is

10    someone -- did someone just sign on?

11              MR. GREENE:  Yes, Your Honor.  This is Dustin

12    Greene for the Plaintiff.  Sorry, I dropped the call and

13    had to --

14              THE COURT:  Oh, okay.

15              Okay, go ahead.  I'm sorry.  Mr. Tooley, I'm

16    sorry I interrupted you.  Go ahead.

17              MR. TOOLEY:  So there's a lot of other

18    companies in our -- our similar shoes.  And just the

19    personnel hours that would have to be devoted to this are

20    enormous.

21              THE COURT:  Well, are the records -- aren't the

22    records kept electronically?

23              MR. TOOLEY:  Not all records are

24    electronically.  In particular, some of them, the

25    electronic format is another issue.  When you get down to
```

Roger Birdbear, et al. v. USA                                    6/28/2017

1    some of the technical engineering data that they're

2    asking about, it's a whole different process to do those

3    searches.  I've had a number of other cases where that

4    can be a real challenge.

5             THE COURT:  Mm-hmm.

6             MR. TOOLEY:  And then, of course, the item that

7    Mr. Thompson already addressed, the internal

8    communications, makes it difficult as well.  That

9    requires, you know, a privilege review on our end, and

10   that's also time-consuming.  So to the extent we can get

11   some sidebars on this and figure out what Plaintiffs are

12   receiving through the Government anyway, that would be

13   very much appreciated by Whiting and I think the other

14   subpoena recipient.

15            THE COURT:  Mr. Smith, do you have any response

16   to that?

17            MR. SMITH:  Your Honor, our response to that is

18   simply this:  The burden is on them in objecting to and

19   moving to quash the subpoena to come up with specific and

20   compelling truth by affidavit or other evidence of the

21   burden.

22            THE COURT:  Mm-hmm.

23            MR. SMITH:  And simply saying, hey, this is

24   going to take a lot of time and we may not all be

25   electronic is not that -- the evidence that's required to

Roger Birdbear, et al. v. USA                                    6/28/2017

```
 1    quash the subpoena.
 2              THE COURT:  Okay.
 3              MR. SMITH:  And, you know, this is true of any
 4    business.  I mean, this is a company that has leases on
 5    Plaintiffs' properties about 1,000 acres.  That's
 6    substantial.  And this is -- you know, I'll just, you
 7    know, point out that this is not -- this is a company
 8    that's operated on our client's property since 2007,
 9    about ten years.  And the information we are requesting
10    is something that they are required by law to maintain.
11    It's required in the lease.  I've noticed it in paragraph
12    3(d) that they're required to maintain or to protect the
13    property from drainage.
14              By regulation, they need, if necessary, to
15    protect the property from drainage, and that's 25 CFR
16    211.47(b).  And then under 43 CFR 3162.2, they have to
17    make necessary calculations to determine the amount of
18    drainage.  This is something they had an ongoing duty to
19    do over the past ten years.
20              THE COURT:  Mm-hmm.
21              MR. SMITH:  And, you know, it looks from the
22    documents like, you know, perhaps the Government was
23    relying on them to do that.  And the Government said --
24    and the operator said we don't believe there's any
25    drainage in the Bakken.  And so whatever the case,
```

Roger Birdbear, et al. v. USA                                    6/28/2017

1    whether they did or not, this is some data they should

2    have.  It should be available.  If they didn't perform

3    it, then provide us the data and we can do it.  But the

4    data should have been available and should be available

5    in a reasonable format.

6              MR. TOOLEY:  Your Honor, Keith Tooley if I

7    may?

8              THE COURT:  Yeah.

9              MR. TOOLEY:  There's an extreme amount of

10   reporting required to the Federal Government and to the

11   State of North Dakota, depending on where the lands are

12   located.  I'm wondering whether the Plaintiffs have done

13   that search of all of the available public records rather

14   than shifting that burden onto the subpoena recipient.

15             MR. SMITH:  And, Your Honor, this is David

16   Smith.

17             THE COURT:  Yeah.

18             MR. SMITH:  The answer to that question is

19   yes.  And as you see from the affidavit of our expert

20   witness at the Colorado School of Mines, he says the

21   information that he's reviewed at the State of North

22   Carolina is not sufficient.  And, further, if you look at

23   the affidavit of Mr. Anstey, a lot of the information

24   that we are requesting is identical to the pressure

25   information and things like that that are identical to

Roger Birdbear, et al. v. USA                        6/28/2017

1    the information that the Government was requesting of the

2    operators, and they say, hey, this is the information you

3    need to do your drainage analysis.  We can't see that

4    they ever got that information because it's not been

5    produced to us.

6                  THE COURT:  Mm-hmm.

7                  MR. SMITH:  So that -- this is nothing unique.

8                  THE COURT:  Mm-hmm.

9                  MR. SMITH:  It's something that they are

10   required to do to protect the properties in the Bakken.

11   That -- it's something the operators do every day.  They

12   maintain pressure records, they maintain choke readings

13   to make sure that these properties are protected.

14                 So we know that the Government was looking at

15   this information and expected them to have it.  It's not

16   been produced and it doesn't look like -- and when we

17   look at the Government's records, those pockets are

18   empty.  You know, there's no data in them.  So it doesn't

19   appear that it was provided by them.

20                 THE COURT:  Okay.

21                 MR. SMITH:  So all the information we have

22   right now, in fact, the Government admitted in the

23   discovery responses they don't have that information.

24                 THE COURT:  Okay.

25                 MR. SMITH:  So all we can look to are the

Roger Birdbear, et al. v. USA                                      6/28/2017

1    operators.

2              THE COURT:  Okay.  Let me ask another question.

3    Mr. Smith had circulated a draft protective order.  Did

4    you have a chance to look at that, Mr. Thompson?

5              MR. THOMPSON:  I have, Your Honor, and I'd

6    actually like to speak to that and then speak to some --

7    the past two conversations.

8              The protective order does not limit the

9    Plaintiffs' ability to use the records supplied by the

10   some 11 companies in other proceedings outside of this

11   proceeding, nor have I -- although I have seen e-mails or

12   maybe a letter in that regard.  The Plaintiff in this

13   action acts as a land consultant for lease negotiations.

14   So there's certainly information they have sought that

15   would be of use to anyone who is negotiating with an oil

16   and gas company for a lease from theirs or other person's

17   property.

18             So the protective order does not -- does not

19   provide the sorts of protection to EOG that most

20   protective orders would, and if there were a protective

21   order then it would have to say that any of this

22   information cannot be used outside of this litigation.

23             I would also like to come back to a point that

24   Mr. -- a topic Mr. Tooley and Mr. Smith were addressing,

25   and that is, Your Honor, we still have a very broad

Roger Birdbear, et al. v. USA                              6/28/2017

1    subpoena as to lands and acreage.  As Mr. Smith

2    suggested, the Plaintiffs have about 1,000 acres under

3    lease.  We have not had that subpoena limited as to its

4    parameters.  And even the offer to limit that to a three-

5    mile radius covers some 38,000 acres and hundreds of

6    wells.

7              We're not just speaking to the Plaintiffs'

8    properties here with respect to drainage or any other

9    issue.  We're talking about a substantially larger

10   universe, Your Honor.

11             THE COURT:  Okay.

12             All right, Mr. Tooley, do you have anything

13   else you wanted to add?  And then I'm going to let Mr.

14   Smith have the last word.  And I assume, Ms. Schwarz, you

15   don't want to get involved with this.

16             MS. SCHWARZ:  No, Your Honor.

17             THE COURT:  Okay.

18             Mr. Tooley?

19             MR. TOOLEY:  I would echo what Mr. Thompson

20   just described.  There's likewise not a temporal limit,

21   which was our concern that the geographic scope is

22   enormous.  This goes back 10 or 11 years in time.  It

23   makes the task -- you know, it's a big mountain to climb.

24             THE COURT:  Okay.

25             Mr. Smith?  Is there no temporal limit on the

Roger Birdbear, et al. v. USA                                6/28/2017

```
 1    records that you're seeking?
 2            MR. SMITH:  We actually hadn't -- if you look
 3    back through the correspondence, we actually had an
 4    agreement with Whiting at one time, January 2006.  The
 5    leases with Whiting commenced in 2007.  The leases with
 6    EOG are at some point in 2008.
 7            THE COURT:  So that's the temporal limit?
 8            MR. SMITH:  So we had an understanding, the
 9    same agreement we had with the Government, that discovery
10    would begin January 1, 2006.
11            THE COURT:  Okay.  Is there any final thing you
12    wanted to add, Mr. Smith?
13            MR. SMITH:  I don't -- I don't believe so, Your
14    Honor.
15            THE COURT:  Okay.  Well, I'm going to think
16    about this a little bit more.  I'm not going to quash the
17    subpoena, although I think I'm probably going to limit it
18    in certain respects.
19            And I'm going to ask the parties to work
20    together on a protective order that meets everybody's
21    needs.  And then we'll just take it from there.  So I
22    should be issuing an order in the next couple of days.
23            And have a nice 4th of July.  Thank you.
24            MR. THOMPSON:  Thank you, Your Honor.
25            MR. SMITH:  Thank you.
```

26

Roger Birdbear, et al. v. USA                                    6/28/2017

```
1              MS. SCHWARZ:  Thank you.
2              THE COURT:  Bye.
3              (Whereupon, at 2:28 p.m., the conference was
4   adjourned.)
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

27

Roger Birdbear, et al. v. USA                                    6/28/2017

1                    CERTIFICATE OF TRANSCRIBER

2

3              I, George Quade, court-approved reporter,

4    certify that the foregoing is a correct transcript from

5    the official electronic sound recording of the

6    proceedings in the above-titled matter.

7

8

9

10   DATE:  12/12/2017              s/George Quade

11                                 GEORGE QUADE, CERT

12

13

14

15

16

17

18

19

20

21

22

23

24

25